PARSONS, by T. J. Parsons, Guardian, *ad Litem,* v. LEE et al.

(140 N. W. 712.)

Plaintiff executed a deed for a quarter section of land, and seeks to have it set aside on the ground of mental incompetency.

**Conveyance — deed — mental incompetency — cancelation — pleading — evidence.**

(1) Evidence examined and *held* that the plaintiff was of unsound mind at the time of the execution of the deed. Further *held* that the allegations of the complaint to the effect that plaintiff was afflicted with fits or periods of mental incompetency, and that the plaintiff was mentally incompetent at the

Note.—As to validity of deed by incompetent generally, see note in 19 L.R.A. 489.

As to whether deed of real property executed by an incompetent not judicially declared such may be avoided in an action as law, see note in 19 L.R.A.(N.S.) 461.

time of the execution of the deed, are properly supported by evidence that the plaintiff was an epileptic and feeble minded all his life.

**Pleading — grantee — consideration — return of — condition to cancelation.**
(2) Evidence examined and *held* that the plaintiff received the sum of $350 in cash at the time of the execution of the deed. In the absence of an allegation in the complaint that the grantee acted with a fraudulent intent, it is held that plaintiff should be required to return said sum as a condition to the cancelation of the deed.

Opinion filed March 11, 1913.

Appeal from the District Court for Ward County, *Goss*, J.

Modified and affirmed.

*Greenleaf, Bradford, & Nash* and *Geo. A. McGee,* for appellants.

The evidence offered to prove permanent mental incompetency was not admissible under the pleadings, and cannot sustain the judgment. Garland v. Davis, 4 How. 131, 11 L. ed. 907.

The rule is that evidence not authorized by the allegations cannot be juridically considered; there need be neither objection nor exception to it. Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1061.

The test of the competency of a person to do an act is that he should be qualified to do that particular business rationally. Carnagie v. Diven, 31 Or. 366, 49 Pac. 891.

Capacity to convey real property must be equivalent to ability to devise the same. Chrisman v. Chrisman, 16 Or. 127, 18 Pac. 6; Elwood v. O'Brien, 105 Iowa, 239, 74 N. W. 740; Waldron v. Harvey, 54 W. Va. 608, 102 Am. St. Rep. 959, 46 S. E. 603.

To render a judgment within the jurisdiction of the court, among other things, it must appear that the matter acted upon was before the court under proper pleading. Camp v. First Nat. Bank, 44 Ala. 497, 103 Am. St. Rep. 173, 33 So. 241.

Plaintiff is confined to a recovery upon the cause of action declared upon. Hope v. Blair, 105 Mo. 85, 24 Am. St. Rep. 369, 16 S. W. 595; Swing v. St. Louis Refrigerator & W. G. Co. 78 Ark. 246, 115 Am. St. Rep. 41, 93 S. W. 978; Sache v. Wallace, 101 Minn. 169, 11 L.R.A. (N.S.) 803, 118 Am. St. Rep. 612, 112 N. W. 386, 11 Ann. Cas. 348; Slacum v. Pomery, 6 Cranch, 221–223, 3 L. ed. 205–206.

A fault in the declaration, which ought to have prevented judgment

in the lower court, may be first assigned as error on appeal. Green v. Palmer, 15 Cal. 411, 76 Am. Dec. 492; Bartlett v. Crozier, 17 Johns. 439, 8 Am. Dec. 439; State ex rel. Ward v. Muench, 217 Mo. 124, 129 Am. St. Rep. 536, 117 S. W. 25; Rev. Codes, 1905, Secs. 4018, 4019; Rev. Codes, 1905, § 5380.

The mental incompetency must be established as of the time of the transaction. Wright v. Jackson, 59 Wis. 569, 18 N. W. 486; 4 Ann. Cas. 493, note; Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1060; Elwood v. O'Brien, 105 Iowa, 239, 74 N. W. 740; Chrisman v. Chrisman, 16 Or. 127, 18 Pac. 6; Carnagie v. Diven, 31 Or. 366, 49 Pac. 891.

*Palda, Aaker, & Greene,* for respondent.

It is not proper for appellants to claim for the first time, in this court, that the proofs do not conform to the pleadings. The plaintiff's deed was void. Rev. Codes 1905, § 4018; Hovey v. Hobson, 53 Me. 451, 89 Am. Dec. 705; Burnham v. Mitchell, 34 Wis. 138; Rogers v. Blackwell, 49 Mich. 192, 13 N. W. 512; Hull v. Louth, 109 Ind. 315, 58 Am. Rep. 405, 10 N. E. 270; Gates v. Carpenter, 43 Iowa, 152; Harrod v. Myers, 21 Ark. 592, 76 Am. Dec. 409; 1 Am. Lead. Cas. 259; 22 Cyc. 1176, note 1.

BURKE, J. This is an action brought by the plaintiff through his guardian *ad litem* to set aside as void a deed to 160 acres of land in McHenry county given by plaintiff to one of the defendants. The plaintiff, his father, and his brother, and the defendants Oscar Lee and Orna Lee, all had government homesteads in the same neighborhood. In May, 1903, plaintiff proved up upon his land, and a few days thereafter executed a warranty deed to Hulda Lee, wife of Oscar Lee. The complaint alleges, among other things, "that the plaintiff herein is afflicted with fits or periods of mental incompetency, at which times the said plaintiff is incompetent to transact business, or to know or realize what the plaintiff herein is doing. That on or about the 16th day of June, 1903, this plaintiff, while mentally incompetent and without knowing what he did, or what was being done by him, the said plaintiff, executed an instrument in writing which plaintiff now learns purported to be a warranty deed signed by this plaintiff . . . and reciting a consideration therein of $900. That plaintiff further states the fact

24 N. D.—41.

to be that he has no knowledge of having executed any such instrument, and that in fact he never received from Hulda Lee, the grantee named in such purported deed, any money or consideration whatever, and that said deed is wholly void, and was procured by fraud, and was signed, if signed at all, by this plaintiff when said plaintiff was mentally incompetent and wholly unable to judge of the nature of the act which was then performed; that this plaintiff never had at any time any intent to transfer said land in accordance with said purported warranty deed."

(1) The evidence offered at the trial was to the effect that plaintiff was subject to fits from childhood, and that he was not temporarily mentally incompetent, but permanently so, having been in this condition all his life. Many of the witnesses have known plaintiff from his early boyhood. We will give extracts only of the testimony of a few of those witnesses which is fairly typical of all of the testimony upon that point. One witness says, "He was paralyzed upon one side, one hand, one foot, and he held his hand up to one side close to his body, and one foot kind of dragged, and his face was drawn to one side." Another witness says, "I went to school with him and he never made any advancement in his studies. He didn't talk any intelligent talk with the boys. One reason that I knew he wasn't smart,—he would run away nights and hide in the woods, and the family would have to go out and hunt him. . . . We went to class in the fourth reader; he could hardly read in the first reader; he wasn't fit for the fourth reader." Another witness says, "He would go out in the road and stand around sometimes, maybe for half an hour, and walk off again. I have known of him going away from home at night and his father coming after me to go and hunt for him. We took lanterns and hunted until about 12 o'clock at night, and we gave him up to freeze,—it was down about zero. We quit then and he told us next morning that 'e had followed us around, and laughed about it." Another witness says, "He was a boy that didn't talk much. About all he would say would be 'yes' and 'no' when you would talk with him. I never heard him in conversation with others. . . . He came to my house one night after I had gone to bed. I heard a noise on the porch quite a bit. He didn't knock at the door. I got up and opened the door and Wade Parsons was standing on the porch. He was pretty cold. It was a cold

night. I asked him in, he came in, and I put him to bed. . . . He got up the next morning, but disappeared without saying anything about where he was going." His brother testified that "his mind resembles something like that of a child. His ideas resembled that of a child." This brother also testifies that his mind had been weak all his life, and was getting worse of late years. The plaintiff's father testifies that Wade was subject to fits; he says, "He takes spells and falls just like a man shot. He was liable to fall at any time." All of the plaintiff's witnesses state positively that in their opinion plaintiff was totally unable to understand the nature of or transact any business whatever. The plaintiff himself was called as a witness and gave testimony covering many pages of the printed abstract. This testimony is too long to be set forth in this opinion, but we have reached the conclusion, after a thorough examination, that the plaintiff was very weak mentally, and that he was in no condition at any time in his life to transact business of the importance of this sale. He is made to say many contradictory things, and evidently was much confused. Upon the whole testimony we are inclined to believe with the finding of the trial court that he "was of unsound mind," and "his mental condition was such that he was incapable of understanding the significance of contracts or any other ordinary transactions of business, and not of sufficient understanding to make him capable of executing contracts of any kind." The appellants insist that all of the above enumerated testimony was improperly received under the pleadings, and point to the fact that the complaint alleges that the plaintiff was afflicted with fits or periods of mental incompetency. We do not think there is anything in this point. The complaint also alleges that the deed was given while the plaintiff was mentally incompetent and without knowing what he did, and the one allegtaion is as important as the other. At all events the proof is broader than the allegation of the complaint, according to appellants' construction. The pertinent fact proven was that, at the time of the execution of the deed, plaintiff was clearly incompetent to execute the same. Whether this incompetency was temporary or permanent does not appear to us to be vital, excepting as it may affect the question of the return of the $350 hereinafter mentioned, and as to this we have decided that it be returned to defendants anyhow.

(2) The above announced conclusion renders the deed invalid, and

the only question remaining is whether or not the defendants paid him any money, and if so, whether or not such money must be returned. The three defendants testify, and they are corroborated by one disinterested witness, that plaintiff came to the house of Oscar Lee and offered to sell him the farm for $1,000, saying that he had quarreled with his father and wished to go to Canada to his brother. They testify that the sale was made finally for $900, $350 of which was to be cash and $550 was to be represented by the defendants assuming a mortgage of that amount upon the premises. The three defendants testify that they were present when Mrs. Lee counted out the cash and paid to plaintiff $350. This testimony is corroborated by that of the witness Maple, who was a hired man, and who testifies that he took particular notice of the amount of the money and counted it while Mrs. Lee was counting it, and knows that there was $350, and that the plaintiff rolled it up and put it into his pocket. There is no testimony to the contrary, and the plaintiff, when on the stand, both denied and admitted receiving such amount. The testimony of the witness Maple is particularly convincing, as his testimony was given by deposition, and he seemed to be entirely removed from any influence of the Lees. We are therefore unable to agree with the trial court in its finding that no consideration was paid. It being our conclusion then that the plaintiff received $350 in cash on the 16th of June, 1903, the next question arises as to whether this amount should be repaid before the deed is ordered canceled. The trial court held that the defendants, and each of them, knew of the mental condition of plaintiff, and that their actions in dealing with him amounted to a fraud, and that they were not entitled in equity to have any sum paid to them, if they had in fact parted with anything. The finding is amply supported in the evidence, and we would probably not disturb the same had it been pleaded; but the complaint nowhere alleges that the defendants were aware of plaintiff's condition, or that they were guilty of any fraud. In view of these facts, and the further fact that plaintiff has not asked an amendment of his complaint in this particular, we will order that this money be returned to defendants with 7 per cent interest since June 16, 1903. The trial court will modify its judgment in this particular, and enter a judgment that the plaintiff shall pay such sum to the defendants within ninety days after notice of final entry of judgment, and thereupon

the court will enter a decree canceling said deed. If the said sum is not paid within such time, the action will be dismissed. The mortgage upon the land, which is owned by the defendant Oscar Lee, has not been attacked, and will stand.

Our conclusion herein shall in no manner be held to prejudice any right which plaintiff may have to require from defendant an accounting for the rents and profits of the land since the year A. D. 1903, in an independent action.

Goss, J., being disqualified, took no part in this decision.