JOSEPH MANN, Administrator of the Estate of Melissa C. Prouty, Deceased, v. JOHN L. PROUTY.

(164 N. W. 139.)

Contracts — warranty deed — action to cancel — grantor fatally ill — capacity to transact business — lower court — findings and judgment — evidence — sustained by.

In an action brought to set aside and cancel a deed executed by one, an aged person, who at the time of the execution thereof was fatally ill, and from which illness shortly afterwards died, and it appearing from the testimony that the grantor, the mother, had seven children, all of whom had reached maturity, and the property conveyed consisted of a half section of land which was practically all the property the grantor owned at the time of her death, and one of the main grounds alleged for the setting aside and cancelation of the deed was the undue influence of the grantee over the grantor at the time, and prior to the time, of the execution of such deed, and during the time of her illness, the judgment of the lower court rendered in the exercise of its equitable powers, decreeing that one of the quarter sections of such land should go to the grantee, and as to the other the deed should be declared void and set aside, will be sustained, where the testimony shows or tends to show an undue influence of the grantee over the grantor, and where the testimony shows that the grantee procured the drawing of such deed, and did other things in and about having the deed prepared, and the testimony of one physician shows that the grantor was incompetent and incapacitated at the time of the execution of the deed to transact business which required as much physical and mental capacity as the execution of the deed in question; and the testimony further showing that the grantor was exceedingly ill at the time of the execution of the deed and was sixty-nine years old.

Opinion filed July 19, 1917.

Appeal from the District Court of McLean County, *J. M. Hanley,* Judge.

Affirmed.

Note.—On presumption and burden of proof as to undue influence respecting gifts *inter vivos* from parent to child, see note in 35 L.R.A.(N.S.) 944.

On presumption of undue influence from unnatural testamentary disposition, see notes in 6 L.R.A.(N.S.) 202 and 22 L.R.A.(N.S.) 1024.

On avoiding deed for undue influence or mental incapacity, see note in 34 Am. St. Rep. 86.

On mental incapacity of grantor, see note in 67 Am. St. Rep. 788.

*J. A. Hyland,* for appellant.

The reason for allowing duress to avoid a deed is that consent, one of the essential elements, is wanting. 1 Devlin, Real Estate, ¶ 83; Bane v. Detrick, 52 Ill. 19.

The burden of proving undue influence is upon the party alleging it. 1 Devlin, Real Estate, ¶ 84; Howe v. Howe, 99 Mass. 88.

If the influence be a just exercise of power, a discreet and proper influence directed to accomplish commendable and lawful ends, it is an influence to which the law will take no exception, but rather will uphold and encourage. Davis v. Culver, 13. How. Pr. 62; Suttles v. Hay, 41 N. C. (6 Ired. Eq.) 124; Miller v. Miller, 3 Serg. & R. 267, 8 Am. Dec. 651; Allore v. Jewell, 94 U. S. 506, 24 L. ed. 260.

It must be borne in mind that suggestion and advice, addressed to judgment, and appeals to gratitude, love, and esteem, do not of themselves constitute undue influence. Delaplain v. Grubb, 44 W. Va. 612, 67 Am. St. Rep. 788, 30 S. E. 201.

To be undue, the influence must proceed from dominance and coercion, and not from sympathy and affection. Adair v. Craig, 135 Ala. 332, 33 So. 902; Sawyer v. White, 58 C. C. A. 587, 122 Fed. 223.

Family relationship of itself does not establish fiduciary relationship. Bishop v. Hilliard, 227 Ill. 382, 81 N. E. 403; Albrecht v. Hunecke, 196 Ill. 127, 63 N. E. 616; Thill v. Freiermuth, 132 Minn. 242, 156 N. W. 260; Zinkula v. Zinkula, 171 Iowa, 287, 154 N. W. 158; Pritchard v. Hutton, 187 Mich. 346, 153 N. W. 705; Lewis v. Murray, 131 Minn. 439, 155 N. W. 395.

The influence condemned means that which destroys free agency to act. Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131; Pritchard v. Hutton, 187 Mich. 346, 153 N. W. 105; Comp. Laws 1913, § 5852; Ingwaldson v. Skrivseth, 7 N. D. 388, 75 N. W. 772.

Where a deed is made by a parent to a child it is absolutely necessary to show that independent advice has been taken, even though an advantage over the grantor has been gained. Carney v. Carney, 196 Pa. 34, 46 Atl. 264; Sawyer v. White, 58 C. C. A. 587, 122 Fed. 223; Whitten v. McFall, 122 Ala. 619, 26 So. 131; Latimer v. Latimer, 174 Ill. 418, 51 N. E. 548; Valter v. Blavka, 195 Ill. 610, 63 N. E. 499; Ball v. Ball, 214 Ill. 255, 73 N. E. 314.

The fact that a person is impaired physically by old age and con-

sequent loss of mental vigor is not sufficient to avoid a deed. Tate v. Holmes, 22 C. C. A. 466, 44 U. S. App. 702, 76 Fed. 664; Stringfellow v. Hanson, 25 Utah, 480, 71 Pac. 1052; Sibley v. Somers, 62 N. J. Eq. 595, 50 Atl. 321; Delaplain v. Grubb, 44 W. Va. 612, 67 Am. St. Rep. 788, 30 S. E. 20; Wright v. Jackson, 59 Wis. 569, 18 N. W. 486; or that he has severe bodily ailments (Bowdoin College v. Merritt, 75 Fed. 480; Swank v. Swank, 37 Or. 439, 61 Pac. 846).

The presumption is that the grantor was sane and competent to execute the deed. Buckey v. Buckey, 38 W. Va. 168, 18 S. E. 383; West v. Douglas, 145 Ill. 164, 34 N. E. 141; Mallow v. Walker, 115 Iowa, 238, 91 Am. St. Rep. 158, 88 N. W. 452; Paulus v. Reed, 121 Iowa, 224, 96 N. W. 757; Sears v. Vaughan, 230 Ill. 572, 82 N. E. 881; Altig v. Altig, 137 Iowa, 420, 114 N. W. 1056; Kime v. Addlesperger, 24 Ohio C. C. 397; Clarke v. Hartt, 56 Fla. 775, 47 So. 819.

Where there is no evidence of fraud committed, or of undue influence or advantage taken of the grantor's weakness, such weakness, unless it is to such a degree that it may be termed imbecility, will not invalidate the deed; and where the evidence is fairly evenly divided upon this question, the deed will not be set aside. Marmon v. Marmon, 47 Iowa, 121; Trimbo v. Trimbo, 47 Minn. 389, 50 N. W. 350; Argo v. Coffin, 142 Ill. 368, 34 Am. St. Rep. 86, 32 N. E. 679; Onstott v. Edel, 232 Ill. 201, 83 N. E. 806, 13 Ann. Cas. 28.

It is not evidence of unsoundness that a father conveyed the most of his real property to his sons, to the exclusion of his daughters. McLaughlin v. McLaughlin, 241 Ill. 366, 89 N. E. 645; Slaughter v. McManigal, 138 Iowa, 643, 116 N. W. 726; Case v. Bogart, 188 Mich. 297, 154 N. W. 45; Zinkula v. Zinkula, 171 Iowa, 287, 154 N. W. 158.

A person is legally competent to execute a deed when he is capable of knowing the nature, character, and effect of it. Black v. Post, 67 W. Va. 253, 67 S. E. 1072; Johnson v. Coleman, 134 Ga. 696, 68 S. E. 480; Francis v. Preachers' Aid Soc. 149 Iowa, 158, 126 N. W. 1027; Hale v. Cole, 31 W. Va. 576, 8 S. E. 516; Ramsdell v. Ramsdell, 128 Mich. 110, 87 N. W. 81.

The courts have universally held that no presumption of undue influence, in case of conveyance *inter vivos* by parent to child, arises from the mere relationship of the parties, and that therefore the burden

is upon the attacking party to show undue influence. Skrinsrud v. Schwenn, 158 Wis. 142, 147 N. W. 370; Re Crissick, — Iowa, —, 156 N. W. 415; McLeod v. McLeod, 145 Ala. 269, 117 Am. St. Rep. 41, 40 So. 414; Bain v. Bain, 150 Ala. 453, 43 So. 562; Dolberry v. Dolberry, 153 Ala. 434, 44 So. 1018; Sanders v. Gurley, 153 Ala. 459, 44 So. 1022; Neal v. Neal, 155 Ala. 604, 47 So. 66; Stanfill v. Johnson, 159 Ala. 546, 49 So. 223; Soberanes v. Soberanes, 97 Cal. 140, 31 Pac. 910; Becker v. Schwerdtle, 6 Cal. App. 462, 92 Pac. 398; Mooney v. Mooney, 80 Conn. 446, 68 Atl. 985; Burt v. Quisenberry, 132 Ill. 385, 24 N. E. 622; Oliphant v. Liversidge, 142 Ill. 160, 30 N. E. 334; Francis v. Wilkinson, 147 Ill. 370, 35 N. E. 150; Rickman v. Meier, 213 Ill. 507, 72 N. E. 1121; Bishop v. Hilliard, 227 Ill. 382, 81 N. E. 403; Sears v. Vaughan, 230 Ill. 572, 82 N. E. 881; Hudson v. Hudson, 237 Ill. 9, 86 N. E. 661; Fitzgerald v. Allen, 240 Ill. 80, 88 N. E. 240; McLaughlin v. McLaughlin, 241 Ill. 366, 89 N. E. 645; Kosturska v. Bartkiewictz, 241 Ill. 604, 89 N. E. 657; Tenbrook v. Brown, 17 Ind. 410; McCammack v. McCammack, 86 Ind. 387; Teegarden v. Lewis, 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9; Slayback v. Witt, 151 Ind. 376, 50 N. E. 389; Curtis v. Burns, 27 Ind. App. 74, 60 N. E. 963; Samson v. Samson, 67 Iowa, 253, 25 N. W. 233; Muir v. Miller, 72 Iowa, 585, 34 N. W. 429; Mallow v. Walker, 115 Iowa, 238, 91 Am. St. Rep. 158, 88 N. W. 452; Chidester v. Turnbull, 117 Iowa, 168, 90 N. W. 583; Burrow v. Hicks, 144 Iowa, 584, 120 N. W. 727; Bauer v. Bauer, 82 Md. 241, 33 Atl. 643; Kennedy v. McCann, 101 Md. 643, 61 Atl. 625; Russell v. Phillips, 145 Mich. 268, 108 N. W. 718; Jenning v. Rohde, 99 Minn. 335, 109 N. W. 597; Rader v. Rader, 108 Minn. 139, 121 N. W. 393; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287; Burnett v. Smith, 93 Miss. 566, 47 So. 117; McKinney v. Hensley, 74 Mo. 326; Doherty v. Noble, 138 Mo. 25, 39 S. W. 458; Hatcher v. Hatcher, 139 Mo. 614, 39 S. W. 479; McKissock v. Groom, 148 Mo. 459, 50 S. W. 115; Bonsal v. Randall, 192 Mo. 525, 111 Am. St. Rep. 528, 91 S. W. 475; Jones v. Thomas, 218 Mo. 508, 117 S. W. 1177; Gibson v. Hammang, 63 Neb. 349, 88 N. W. 500; Ward v. Ward, 86 Neb. 744, 126 N. W. 305; Justice v. Justice, — N. J. Eq. —, 18 Atl. 674; Re Flagg, 27 Misc. 401, 59 N. Y. Supp. 167; Toms v. Greenwood, 30 N. Y. S. R. 478, 9 N. Y. Supp. 666; Wessell v. Lathjoln, 89

N. C. 377, 45 Am. Rep. 696; McAdams v. McAdams, 80 Ohio St. 232, 88 N. E. 542; Kime v. Addlesperger, 24 Ohio C. C. 397; Crothers v. Crothers, 149 Pa. 201, 24 Atl. 190; Yeakel v. McAtee, 156 Pa. 600, 27 Atl. 277; Simon v. Simon, 163 Pa. 292, 29 Atl. 657; Knowlson v. Fleming, 165 Pa. 10, 30 Atl. 519; Clark v. Clark, 174 Pa. 309, 34 Atl. 610, 619; Campbell v. Brown, 183 Pa. 112, 38 Atl. 516; Carney v. Carney, 196 Pa. 34, 46 Atl. 264; Kleckner v. Kleckner, 212 Pa. 515, 61 Atl. 1019; Vaughn v. Vaughn, 217 Pa. 496, 66 Atl. 745; Wendt's Estate, 14 Pa. Super. Ct. 644; Britton v. Britton, 23 Pa. Co. Ct. 89; Worrall's Appeal, 110 Pa. 349, 1 Atl. 380, 765; Travis v. Lowry, 5 Sadler (Pa.) 525, 8 Atl. 601; Saufley v. Jackson, 16 Tex. 579; Millican v. Millican, 24 Tex. 426; Chadd v. Moser, 25 Utah, 369, 71 Pac. 870; Orr v. Pennington, 93 Va. 268, 24 S. E. 928; Todd v. Sykes, 97 Va. 143, 33 S. E. 517; Burwell v. Burwell, 103 Va. 314, 49 S. E. 68; Rixey v. Rixey, 103 Va. 414, 49 S. E. 586; Jenkins v. Rhodes, 106 Va. 564, 56 S. E. 332; Teter v. Teter, 59 W. Va. 449, 53 S. E. 779; Vance v. Davis, 118 Wis. 548, 95 N. W. 939; Meyer v. Arends, 126 Wis. 603, 106 N. W. 675; Mason v. Seney, 11 Grant, Ch. (U. C.) 447; Wycott v. Hartman, 14 Grant, Ch. (U. C.) 219; Armstrong v. Armstrong, 14 Grant, Ch. (U. C.) 528; McConnell v. McConnell, 15 Grant, Ch. (U. C.) 20.

The parent, in such cases, is presumed to have been the dominant party. McLeod v. McLeod, 145 Ala. 269, 117 Am. St. Rep. 41, 40 So. 414; Dolberry v. Dolberry, 153 Ala. 434, 44 So. 1018; Sanders v. Gurley, 153 Ala. 459, 44 So. 1022; Neal v. Neal, 155 Ala. 604, 47 So. 66; McLaughlin v. McLaughlin, 241 Ill. 366, 89 N. E. 645; Mallow v. Walker, 115 Iowa, 238, 91 Am. St. Rep. 158, 88 N. W. 452.

Where the parent is aged and living with the child, creates no presumption of undue influence. Bishop v. Hilliard, 227 Ill. 382, 81 N. E. 403; Bonsal v. Randall, 192 Mo. 525, 111 Am. St. Rep. 528, 91 S. W. 475; Kime v. Addlesperger, 24 Ohio C. C. 397; Chidester v. Turnbull, 117 Iowa, 168, 90 N. W. 583.

The test of whether a person has mental capacity to make a deed is whether or not he is qualified to do that particular business. Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1058.

*Newton, Dullam, & Young,* and *J. T. Hoge,* for respondent.

In charges of undue influence, courts should be liberal in admitting

evidence of all circumstances, even though slight, which might tend, in conjunction with other circumstances, to throw light upon the relation of the parties and upon the disputed question of undue influence. Clough v. Clough, 10 Colo. App. 443, 51 Pac. 513; Re Shell, 28 Colo. 167, 53 L.R.A. 387, 89 Am. St. Rep. 181, 63 Pac. 413.

The age and physical condition of the grantor are properly to be considered. Cole v. Getzinger, 96 Wis. 559, 71 N. W. 75; Semper v. Englehart, 140 Iowa, 286, 118 N. W. 318; Blackman v. Edsall, 17 Colo. App. 429, 68 Pac. 790; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Myers v. Hauger, 98 Mo. 433, 11 S. W. 974.

A further circumstance is the mental condition of the grantor. Cole v. Getzinger, 96 Wis. 559, 71 N. W. 75; Blackman v. Edsall, 17 Colo. App. 429, 68 Pac. 790; Allore v. Jewell, 94 U. S. 506, 24 L. ed. 260; Lester v. Mahan, 25 Ala. 445, 60 Am. Dec. 530.

And in cases where deeds have been obtained by the exercise of undue influence over a man whose mind had ceased to be the safe guide of his actions, it is against conscience for him who has obtained them to derive benefit or advantage from them. It is the peculiar province of a court of conscience to set them aside, and that a court of equity will interpose in such a case is among its best settled principles. Harding v. Handy, 11 Wheat. 103, 125, 6 L. ed. 429, 435; Watkins v. Brant, 46 Wis. 419, 1 N. W. 82.

Another material consideration is the confidential relation existing between the grantor and the beneficiary. Samson v. Samson, 67 Iowa, 253, 25 N. W. 233; Yardley v. Cuthbertson, 108 Pa. 395, 56 Am. Rep. 218, 1 Atl. 765; Dunn v. Dunn, 42 N. J. Eq. 431, 7 Atl. 842; Darlington's Appeal, 86 Pa. 519, 27 Am. Rep. 726; Stewart's Estate, 137 Pa. 175, 20 Atl. 554; Thorn v. Thorn, 51 Mich. 167, 16 N. W. 324; Davis v. Dean, 66 Wis. 100, 26 N. W. 737; Cole v. Getzinger, 96 Wis. 559, 71 N. W. 75; Brummond v. Krause, 8 N. D. 576, 80 N. W. 686; Jacox v. Jacox, 40 Mich. 473, 29 Am. Rep. 547.

All the acts and conduct of the person who procures a deed of land from a grantor under such disabilities at the time and prior thereto are matters which form the subject of very careful investigation and consideration; and where deceit, fraud, wrong, and injustice appear, the transaction should not be allowed to stand. Warrall's Appeal, 110 Pa. 349, 1 Atl. 380; Greenfield's Estate, 14 Pa. 489; Miskey's Appeal, 3

Pennyp. 409; Turner v. Collins, L. R. 7 Ch. 329, 41 L. J. Ch. N. S. 558, 25 L. T. N. S. 779, 20 Week. Rep. 305; Gandy v. Macaulay, L. R. 31 Ch. Div. 1.

There is great significance in the close relationship of the parties. Hall v. Otterson, 52 N. J. Eq. 522, 28 Atl. 907; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287; Miller v. Miller, 187 Pa. 572, 41 Atl. 277; Justice v. Justice, — N. J. Eq. —, 18 Atl. 674; Hensan v. Cooksey, 237 Ill. 620, 127 Am. St. Rep. 345, 86 N. E. 1107; Highberger v. Stiffler, 21 Md. 338, 83 Am. Dec. 593; Smith v. Smith, 84 Kan. 242, 35 L.R.A.(N.S.) 944, 114 Pac. 245.

Especially is this true where the parent is in reduced physical and mental condition,—where the health has for a long time been greatly impaired, and where he is aged and infirm. Smith v. Smith, supra; Couch v. Couch, 148 Ala. 332, 40 So. 624; Croissant v. Beers, 118 Ill. App. 502; Spargur v. Hall, 62 Iowa, 498, 17 N. W. 743; Brant v. Brant, 115 Iowa, 701, 87 N. W. 406; Paddock v. Pulsifer, 43 Kan. 718, 23 Pac. 1049; Brummond v. Krause, 8 N. D. 576, 80 N. W. 686; Fjone v. Fjone, 16 N. D. 100, 112 N. W. 70.

Inadequacy of consideration is another important circumstance. Thorn v. Thorn, 51 Mich. 167, 16 N. W. 324; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287; Allore v. Jewell, 94 U. S. 506, 24 L. ed. 260; Fitch v. Reiser, 79 Iowa, 34, 44 N. W. 214; Graham v. Burch, 44 Minn. 33, 46 N. W. 148.

And that the grantor under such circumstances was without opportunity for independent advice is another element to be considered. Slack v. Rees, 66 N. J. Eq. 447, 69 L.R.A. 393, 59 Atl. 466; Post v. Hagan, 71 N. J. Eq. 234, 124 Am. St. Rep. 997, 65 Atl. 1026; Rhodes v. Bate, L. R. 1 Ch. 252, 12 Jur. N. S. 178, 35 L. J. Ch. N. S. 267, 13 L. T. N. S. 778, 14 Week. Rep. 292; Nesbit v. Lockman, 34 N. Y. 167; Watkins v. Brant, supra; Yordi v. Yordi, 6 Cal. App. 20, 91 Pac. 348; Bergen v. Udall, 31 Barb. 9; Williams v. Williams, 63 Md. 371; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287.

The activity of the beneficiary in the preparation of the deed is significant; also the secrecy of his actions. Disch v. Timm, 101 Wis. 179, 77 N. W. 196; Bancroft v. Otis, 91 Ala. 279, 24 Am. St. Rep. 904, 8 So. 286; Richmond's Appeal, 59 Conn. 226, 22 Am. St. Rep.

85, 22 Atl. 82; Martin v. Martin, 1 Heisk. 644; Decker v. Waterman, 67 Barb. 460; Smith v. Henline, 174 Ill. 184, 51 N. E. 227.

The fact that the distribution of property resulting from the conveyance is grossly unequal and unjust strengthens the evidence of undue influence when its existence is indicated by other independent evidence. Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; Newhouse v. Goodwin, 17 Barb. 236; Spargur v. Hall, 62 Iowa, 498, 17 N. W. 743; Manatt v. Scott, 106 Iowa, 203, 68 Am. St. Rep. 293, 76 N. W. 721.

That the inequities of a will may be taken into consideration in determining the mental capacity of the testator, or whether undue influence has been exercised, is well settled. Re Hess, 48 Minn. 504, 31 Am. St. Rep. 665, 51 N. W. 614; Cole v. Getzinger, 96 Wis. 559, 71 N. W. 75; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891; Fairchild v. Bascomb, 35 Vt. 398.

Closely related to the foregoing is the intent of the donor as expressed prior to the exercise of the alleged undue influence. Graham v. Burch, 44 Minn. 33, 46 N. W. 148; Davis v. Dean, 66 Wis. 100, 27 N. W. 737; Tyler v. Gardiner, 35 N. Y. 559; Frush v. Green, 86 Md. 494, 39 Atl. 863.

The effect of the grant upon the donor must be considered. Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891; Graham v. Burch, 44 Minn. 33, 46 N. W. 148; Clark v. Stansbury, 49 Md. 346; Lins v. Lenhardt, 127 Mo. 271, 29 S. W. 1025.

The dominating character of the person favored is a circumstance to be considered. Hartman v. Strickler, 82 Va. 225; Lewis v. Mason, 109 Mass. 169.

With all these circumstances to be properly considered, there is still the further element of opportunity. Fischer v. Sperl, 94 Minn. 421, 103 N. W. 402; Watkins v. Brant, 46 Wis. 419, 1 N. W. 82; Re Wheeler, 5 Misc. 279, 25 N. Y. Supp. 314; Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; Davis v. Dean, 66 Wis. 100, 27 N. W. 737; Loennecker's Will, 112 Wis. 461, 88 N. W. 215.

That undue influence is more readily established in transactions *inter vivos,* than in testamentary dispositions, is the rule laid down by many authorities. Bancroft v. Otis, 91 Ala. 279, 24 Am. St. Rep. 904, 8

37 N. D.—31.

So. 286; Michael v. Marshall, 201 Ill. 70, 66 N. E. 273; Re Sparks, 63 N. J. Eq. 242, 51 Atl. 118.

"The general rule of principle is that where, from the nature of the transaction and the situation and relation of the parties, fraud and imposition may be presumed, relief will be granted in equity, although fraud in fact be not proved." Smith v. Smith, 84 Kan. 242, 35 L.R.A. (N.S.) 944, 114 Pac. 245; Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; Greenfield's Estate, 14 Pa. 489; Disch v. Timm, 101 Wis. 179, 77 N. W. 196; Justice v. Justice, — N. J. Eq. —, 18 Atl. 674.

The coupling of a confidential relation with a grossly inadequate consideration is sufficient to shift the burden of proof. Re Wheeler, 5 Misc. 279, 25. N. Y. Supp. 314; Rickman v. Meier, 213 Ill. 507, 72 N. E. 1121.

The circumstances combining to make a prima facie case were the making of a conveyance by an aged person of his entire property without consideration to one standing in a position of trust and confidence, under circumstances of secrecy. Doyle v. Welch, 100 Wis. 24, 75 N. W. 400.

It is the function of this court to try this cause anew, and to render such a decision as justice may require. Comp. Laws 1913, § 7846; Tyler v. Shea, 4 N. D. 377, 50 Am. St. Rep. 660, 61 N. W. 468.

GRACE, J. This case is one involving the title and ownership of the southeast quarter of section 1, and the northeast quarter of section 12,—all in township 147, north of range 82, McLean county, North Dakota. The action is one to quiet title. The complaint, in addition to being in the usual statutory form, contains other allegations, among which are those alleging ownership of, and title to, said land by Melissa C. Prouty on the 11th day of October, and prior thereto, and from said date up to and including the 10th day of November, 1910, on which last date Melissa C. Prouty died, and left surviving her as heirs at law five sons and two daughters, all of whom are living. That the defendant claims title to said land by virtue of a warranty deed executed by Melissa C. Prouty on or about the 11th day of October, 1910, such deed being dated October 1, 1910, wherein and whereby it is claimed that said premises were conveyed to the defendant. That on the 11th day of October, 1910, and for a long time prior thereto, said Melissa

C. Prouty by reason of sickness, ill health, and advanced years, was weak and feeble in body and in mind, and was confined to her bed at her home upon said premises. That by reason of her weakness and physical disability she was unable to read or write, and was wholly unfit and incompetent to engage in the transaction of her business. That the defendant is the son of Melissa C. Prouty and one of her heirs at law, and that on the 11th day of October, 1910, and for a long time prior thereto, resided with his family upon land adjoining the above-described premises. Then follows numerous other obligations to the effect that defendant, while his mother lay sick, obtained her trust and confidence to such degree that he could control and overpower her will, and while said Melissa C. Prouty was in such weak and feeble condition and incompetent to carry on business transactions and properly exercise control of her property, the defendant in bad faith designedly and without the knowledge of the other children of the said Melissa C. Prouty, with the intention of cheating and defrauding them out of their share of their mother's property, and by means of false and fraudulent representations to his mother, took advantage of his close and confidential relations with her, to procure her, while under his influence, on or about the 11th day of October, to make and execute without any consideration whatever, an instrument in writing purporting to convey to said defendant the land in question, which instrument was recorded in the office of the register of deeds for McLean county on the 2d day of October, 1910. Then follows allegations that Melissa C. Prouty had no knowledge at the time she executed said instrument that she was dispossessing herself of the title to said property; and also allegations showing that defendant executed various encumbrances upon such land after he recorded the said warranty deed. The complaint concludes with the prayer that the deed be adjudged null and void and canceled, and that the defendant be required to account to the plaintiff for the money derived from the loans which are described in the complaint, and to make restitution to the plaintiff as the administrator of the estate of Melissa C. Prouty, and other relief was also asked for.

Defendant in his answer sets out certain specific denials, and in addition thereto, and by way of defense, alleges and claims ownership under the warranty deed in question. Also alleges that he purchased the south-

east quarter of section 1 from Millard B. Boddy; and for business reasons and convenience, and with an agreement made by and between Melissa C. Prouty and this defendant, the deed to the said southeast quarter of section 1 named Melissa C. Prouty as grantee therein, the deed bearing date November 20, 1907. And defendant further alleges possession, use, and occupancy of the said southeast quarter of section 1 ever since the time of the delivery of said deed, and that until the 11th day of October, 1910, the said Melissa C. Prouty held the bare legal title to the southeast quarter of section 1 in trust for this defendant. That shortly after Melissa C. Prouty received the deed to said southeast quarter of section 1, and long prior to the 11th day of October, 1910, she made her warranty deed, conveying the said southeast quarter of section 1 to this defendant. That for business reasons and convenience the same was never recorded. That said deed was misplaced and lost; and thereafter, on the 11th day of October, 1910, the said Melissa C. Prouty did convey the same, as heretofore alleged, by the deed of the 11th day of October, 1910. Then follows allegations in the answer, to the effect that on the 11th day of October, the defendant, in accordance with the wishes and request of the said Melissa C. Prouty, and for other considerations, did purchase and buy of said Melissa C. Prouty the northeast quarter of section 12, in township 147, range 82. That Melissa C. Prouty did convey to the defendant by warranty deed the said northeast quarter of section 12. The defendant in other allegations denies the use of any undue influence, or that he acted in a fraudulent manner, or was guilty of fraud in or about the making of the deed in question by the said Melissa C. Prouty, and admits the receiving of $2,400 by reason of mortgaging such land, part of which mortgages, it is alleged, was given to secure a portion of the interest on a certain mortgage for $1,200.

The facts in the case are substantially as follows: On the 10th day of November, 1910, in McLean county, North Dakota, Melissa C. Prouty died intestate, and left surviving her as heirs at law two daughters and five sons. F. E. Funk was appointed as administrator of her estate, and qualified and entered upon the discharge of the duties of his office after having received letters of administration. That until the 11th day of October, 1910, the legal title to all the land in question was in Melissa C. Prouty. On that day it appears that a warranty deed was

made from her to the defendant to all the land in question, which deed the plaintiff claims was procured by fraud and undue influence. The defendant claims that for a long time he has been the owner of the southeast quarter of section 1, and that on the 11th day of October, 1910, he purchased the northeast quarter of section 12. It also appears that at the time Melissa C. Prouty executed the deed in question she was about sixty-nine years of age, and was at that time in feeble health and had been in ill health for some time prior thereto. The defendant is the son of Melissa C. Prouty and one of her heirs at law; and upon the 11th day of October, and for a long time prior thereto, he and his family resided upon land adjoining the premises in question, and often visited his mother during the time she was sick, and at times before the time of her sickness he had managed some of her business. The deed in question was prepared at the request of the defendant or under his direction. Melissa C. Prouty had no property other than her interest in the land in question, except personal property of the estimated value of about $400.

The sole question in this case is the ownership of the land in question; and in order to determine fully upon this point, it will be necessary to consider each quarter section of such land separately. We will first consider the southeast quarter of section 1. It appears from the testimony that Melissa C. Prouty before coming to the state of North Dakota resided in the state of Iowa for many years, and that while she was residing in the state of Iowa her husband died, and she, with most of her children, resided upon a certain tract of land in the state of Iowa, consisting of an 80-acre tract, and also a 40-acre tract which adjoined, which is termed the "tree claim." That some of her children were with her, and that the defendant, J. L. Prouty, lived adjoining her, with his family, until the death of his wife, when he moved over with his mother for a term of four years and assisted her in various ways, and among other things took care of the trees upon the tree claim; and he claims that his mother promised him that, if he would take care of the trees upon the "tree claim," he should have the same. Thereafter the defendant remarried and came to the state of North Dakota, and thereafter his mother sold the land she had in Iowa, including the tree claim, and also came to North Dakota and made homestead entry on the northeast quarter of section 12, which was

near the home of the defendant. The southeast quarter of section 1 was purchased from Boddy, and was paid for by trading the mortgage on the tree claim for such land. The defendant claims that he was entitled to the tree claim by the promises made by his mother, and that it was understood at the time the southeast quarter of section 1 was purchased that such land should be his, but the legal title of which should be carried in the name of Melissa C. Prouty, his mother, for business reasons concerning the defendant.

We are of the opinion that the claim of the defendant concerning the southeast quarter of section 1 is supported by the testimony in the case, and that as a matter of equity he is entitled to be adjudged the owner in fee of the southeast quarter of section 1.

As to the northeast quarter of section 12, the homestead of the mother, Melissa C. Prouty, we are of the opinion that the claims of the defendant are not supported by the testimony in the case; and before discussing the testimony relative to the execution of the deed, which included the northeast quarter of section 12, we deem it wise to consider certain laws of nature which, when connected with certain parts of the testimony, aid us in disposing of this branch of the case.

Melissa C. Prouty, the mother, at the time of her death left surviving her five sons and two daughters, one of which was the defendant in this case. The testimony shows that practically all the valuable property which Melissa C. Prouty had, under the deed in question went to J. L. Prouty, one of her sons. This was not the natural thing for her to do unless there were special reasons for her disposing of her property in the manner stated. The other four sons and the two daughters were entirely eliminated. They had also, no doubt, during all of their lives, been of more or less service to their mother. They had, no doubt, done many kind acts of service towards her. Jeptha Prouty had lived with her in North Dakota, and helped to take care of her farm; and it is reasonable to suppose that for each of her children she had a true motherly affection. It does not appear from the testimony that she had any trouble with any of them, or they with her. There does not appear any special reason why she should entirely ignore and forget the rights of all the other children, and fail to give them any portion of her property which they as coheirs with the defendant had a reasonable right to expect. Melissa C. Prouty at the time of the execution of the

deed in question was really upon her deathbed. She was the mother of seven children. To say that at such time and such an hour she had no concern and no kindly thought or wish for the future welfare of any of her children excepting one, would be to ignore and set aside all laws of parental affection, and especially would this be true where there was no testimony showing that the mother had any trouble or grievance against any of the other children; and these observations are valuable in support of the contentions of the plaintiff that the deed in question was procured by the defendant from his mother by reason of undue influence, which was exercised at a time when the mother was in a weakened condition, her body racked with pain, and at a time when the material things of this world had ceased to be, most likely, of any great consequence to her. We think that, if the testimony may be in any way nearly equally balanced, considerations such as these would give an added weight to plaintiff's claim. As to the capacity of the mother to execute the deed in question, the most vital testimony is that of the physicians who attended the mother during her last illness. Dr. Cain testified substantially as follows: That he was first called to attend her (Melissa C. Prouty) in the early part of September, 1910. That to the best of his recollections he called on her seven times, the last time being the 6th day of November, and the last time before the 6th day of November he called on her was the 10th day of October,— all in 1910. Testifying as to her physical condition on the 10th of October, he said she was very weak. Further testifying, he said he examined her thoroughly physically. Further testifying as to her condition on the 10th day of October, Dr. Cain said she was confined to her bed, the heart's action was very weak, and her breathing was a constant effort. She seemed to be annoyed by conversation. "To the best of my knowledge she was unable to attend to anything requiring such effort of either mind or body." Dr. Cain further testified that, on the occasion of one visit, she requested him to tell F. A. Russell, banker of Underwood, McLean county, North Dakota, to come to her the following day for the purpose of making a will—"I understood her own." Dr. Cain was a witness on behalf of the plaintiff.

Dr. Heinzeroth was a witness in behalf of the defendant. His testimony shows that he was called in his professional capacity to the home of Melissa C. Prouty. The first time he was so called was in

the latter part of September, 1910; and after that he visited her in his professional capacity four or five times. The last professional call was about October 4th, 1910. He called on her once after that, but not in his professional capacity. He testified that he stopped hardly ever less than half an hour when called. He testified that he thought her mental condition was good each time he was there. He testified that she was very sick, and was affected with kidney trouble and some liver complications, but in answer to a question said that she was rational in her mind; that the same conditions existed the last time he saw her, except that she was probably a trifle weaker, but testified that she was rational and talked about her business with her son. In answer to a question, he said he was present at the time an instrument was made at the Prouty place. He said he did not remember the date, but it was some time during the fore part of October, on one of his visits. In answer to a question as to whether he remembered the nature of it or not, he said he really helped to make it out, and that it was a will. He testified that he did not know what became of it, and did not remember the contents.

Mr. Reuter testified to making out the instrument (the deed), and on the 11th day of October went out to the home of Melissa C. Prouty to have her execute the deed. The testimony shows that he was not there when the deed was signed; that he and John (John Prouty) went into the room, and Mr. Paulson took the instrument and asked Mrs. Prouty if she signed that deed. He further testified that he (Paulson) opened up the deed and asked her if that was her signature. She said, "Yes," that was her signature. He said, "Did you sign that?" and she said, "Yes." He said, "This is a deed to your two quarters of land, the southeast quarter of section 1 and the northeast quarter of section 12-147-82," and she said, "Yes," she had signed it. He (Paulson) told her it was to John Prouty, and it was understood that John Prouty and J. L. Prouty was the same party, and John was in the room at the same time.

The witness Paulson testified to taking the acknowledgment, and testified that he asked her (Melissa C. Prouty) if she signed it of her own free will. "She said, 'Yes, I want Lynn to have this,' were her exact words; and I think I read the material part of the instrument to

her. I could not say for certain, but I think I did, as far as I remember," and further said that he mentioned to her that it was a deed.

Jane Jacobson, a daughter, in answer to the question, "Was there anything said about your mother's property between you and J. L. Prouty?"

A. He said that she was making her will. He was the administrator, him and the doctor over at Turtle Lake.

Jane Jacobson further testified in answer to the following question: "What was said on that Sunday, October 16, 1913, if anything, between your mother and John F. Rueter with reference to her property, or the disposition of her property?

A. When the women folks went out, Rueter started out with them, and ma she called him back and asked him if he had that will fixed. He said, "Yes, grandma, it is all fixed all right."

Q. Did she mention any particular provision of the will?

A. Yes, she asked if he had it all fixed so that Jeptha could not get but $5.

The testimony of Jane Jacobson also was to the effect that she (Melissa C. Prouty) about this time was weak so she could not either get up or lay down without help; that she was weak and nervous. She further testified in answer to a question: "She (Melissa C. Prouty) called me to her bed and asked me if there was anyone else in the room, and I told here there was not, and then she said she had made the will for all alike, except Jeptha Prouty, and he was only to get $5."

The capacity to make a contract is not determined by whether one has much or little intellect. That is, a contract may be good if made by a person with great intellect, or good if made by a person of no great amount of intellect. The true test is, Had the party who made the contract sufficient mental capacity to know the nature of, and understand the terms of, the contract? If so, and there is no undue influence, or circumstances and facts from which undue influence may be inferred, and there is an absence of evidence which would point towards incapacity, such as great senility, severe illness resulting in excessive pain and suffering such as to disturb the equilibrium to some extent, and incapacitate or weaken the mental faculties, the contract may very often be permitted to stand. However, in this class of cases each case must to a large extent, be determined upon its own merits. In the case at

bar, the testimony shows the grantor to have been an aged lady, being in the neighborhood of sixty-nine years of age; that she was exceedingly ill at the time of the execution of the instrument in question; in fact, she was upon her deathbed at that time, and her death ensued within a very few weeks thereafter, and that she was very nervous and irritable; and that during such time the instrument in question was executed, the arrangements for its preparation and execution having largely, if not entirely, been made by the defendant, and he having stood in more or less confidential relation to his mother for many years; coupled with the fact that practically her entire property was thus conveyed to the defendant, places the burden of proof upon the defendant to show the absence of undue influence on his part and sufficient consideration for the execution of the instrument in question. It does not appear that the defendant made any effort to have others of the absent heirs at law present when the deed was executed, excepting Mrs. Jacobson, but it does appear that the interest of all of such heirs was entirely disregarded by the mother (Melissa C. Prouty) when she delivered title by such instrument, the warranty deed in question, and gave all of her property which was of any particular value to the defendant, which transaction, if the mother fully understood it, would largely evidence entire lack of affection in regard to all the balance of her children, and there is nothing in the testimony in this case to prove any such lack of affection for the balance of her children. We think the principle in the case is well expressed in the case of Davis v. Dean, 66 Wis. 100, 26 N. W. 737. The facts in the case of Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1058, cited by the appellant, are entirely different from the facts in the case at bar. In the Nelson Case the deed had been effective for seventeen years. The son had been taking care of the father during much of that time. He had agreed to care for him the balance of his life. Silence had been maintained for seventeen years, and there were many other circumstances that gave the case a different aspect to the one at bar. We have no quarrel with the general rule laid down in that case, which is as follows: "The test of whether a person is competent to make a deed is that he should be qualified to do that particular business rationally—not, on the one hand, that he should be capable of doing all kinds of business with judgment and discretion, nor, on the other hand, that he should be wholly deprived of reason

so as to be incapable of doing the most familiar and trifling work." We do not think, however, that the rational condition of the mind should be limited to the act in question. While the party might not be capable of doing all kinds of business with judgment and discretion, he should have such judgment and discretion to a sufficient extent, and be capable of doing any kind of business transaction which would require no greater degree of intellect than the business transaction which is the subject of discussion.

The trial court, as we view it, has done justice to all the parties to this action, and its decree seems to us to be equitable and just, and the greater weight of all the testimony by the physicians is to the effect that the grantor of the deed in question was not in such mental condition to really be competent to execute the deed or do any like act requiring such a mental and physical effort. While one of the physicians testified that she was rational at all the times he saw her, nevertheless, in view of all the surrounding circumstances and conditions, we think the testimony of Dr. Cain was quite conclusive and entitled to much weight and credit, and more in accord with all the other facts and circumstances of the case.

The judgment of the District Court is in all things affirmed with costs.