[File No. 6226.]

GUNNAR NORDBY et al., Appellants, v. KITTEL H. SAGEN, Respondent.

(252 N. W. 383.)

Opinion filed January 15, 1934.

*Thoresen & Paletz,* for appellants.

*O'Keefe & Pelerson,* for respondent.

BURR, Ch. J. As stated by the appellant, "The action involves an attempt by the plaintiffs to set aside and declare null and void a certain Warranty Deed made, executed and delivered by one Torbjorn O. Nordby on the 5th day of February, 1932, to the defendant Kettil H. Sagen and also assigned over a certain mortgage executed and delivered on the same date to the said Kettil H. Sagen by the said Torbjorn O. Nordby. The plaintiffs are the next of kin of the said Torbjorn O. Nordby, deceased, and bring the said action as heirs at law of the said Torbjorn O. Nordby. The action is based on the theory that the deceased, Torbjorn O. Nordby, did not have sufficient mental capacity to know and understand the business, which he was transacting at the time that the said instruments were executed. That there is no consideration for the said transfer and that they were obtained by the defendant by fraud and undue influence."

The case was tried to the court without a jury. The court made findings of fact and conclusions of law with order for judgment favorable to defendant, and plaintiffs appeal demanding a trial de novo.

Nordby died February 14, 1932, aged seventy-three and a half years. He was born in Norway; but had lived in the United States over thirty years. He was unmarried and at the time of his death his immediate relatives consisted of two brothers and two sisters—the two sisters and one brother live in Norway—and two nephews living in the United States, children of a deceased sister.

For over twenty-five years the deceased had lived in Grand Forks. He accumulated considerable property consisting of the house and lot and the mortgage for five hundred dollars involved in this case, thirty-eight hundred dollars in other mortgages and stock said by the administrator to be worth about thirty-six hundred and fifty dollars, a second mortgage for eighteen hundred dollars said to be practically worthless and some other property.

The personal relations between the deceased and his immediate relatives appeared to be quite cordial and there is no question but what the relations existing between the decedent and the defendant were very friendly.

The defendant was about forty years of age at the time of the transfer and had been acquainted with the decedent since 1914. He testified that there was a distant relationship between them; but this is denied by others.

Decedent was a retiring, reticent man,—a recluse, the doctor called him,—apparently shunned companionship to any particular extent and for years had been suffering from ill health. However, for years it was his custom to build and rebuild houses, sell them, and build more. He engaged in manual labor, lived frugally, was kind to children, discussed literary matters with friends, read the papers and books and kept largely to himself. He had been in the hospital from time to time, underwent various operations, and in December 1931 was again in the hospital for an operation. Upon his own insistent demands, and against the advice of his physician, he was taken to the home of the defendant where he died on February 14, 1932. The doctor said he "died of what we call a complication of diseases, retention of the urine, inflammation of the bladder which probably extended into the kidneys, and pneumonia, involving the lower lobe of the left lung. Towards the last it spread to the right lung." When asked "from the time that he contracted pneumonia until the time of his death he gradually grew

worse?" he said "Yes." Shortly before his death, and at his own request, he was visited professionally by two ministers of the Gospel. Friends not connected with any of the transactions, called upon him during his last illness and at least one was with him when he died. The defendant and his wife took care of him as nurses, under the direction of the physician.

The defendant states that on or about February 5, 1932, at the direction of the deceased, he called on one Fladland and informed Fladland that the deceased wanted him to come to his room and prepare and have executed papers deeding to the defendant the house and lot involved herein. At the request of Fladland one Glaserud accompanied him. Both F. and G. were men engaged in real estate business and were notaries public. F. states the reason he requested G. to accompany him was because he knew the decedent was a sick man and when transacting business with a sick man he thought it wise to have others familiar with business present at the occasion. It was G. that drew the papers, read them to the decedent and assisted in the execution, and it was not until F. and G. called on the decedent that they knew he desired also to assign the mortgage for five hundred dollars. This caused some delay in order to secure the necessary blanks, but the deed and assignment were executed at the direction of the decedent and given to defendant who had them placed on record.

The transfers were gifts, if valid. No consideration was given for the property. The burden of proof is upon the plaintiff to show that at the time of the transfer the decedent was not of sufficient mental competence to understand the meaning of the transaction.

The trial court, in a carefully prepared memorandum opinion, analyzes all of the testimony and particularly the testimony of the witnesses who visited with the decedent during the last two or three weeks of his life time.

"Upon a trial de novo, the supreme court in deciding the facts acts independently of the trial court's findings, although such findings when based upon oral testimony are of necessity entitled to and will be given some weight." Merchants Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488. Though this court is vested with the duty of trying the case anew this does not require the supreme court to wholly disregard the views of the trial court upon matters where, by the very nature of

things its judgment is more likely to be correct than any which the appellate court could form, for this court does not try the case anew in the sense of a new trial for witnesses do not appear and testify. The court tries the case anew upon the record prepared, that is, this court bases its independent judgment upon the testimony already taken. Klimpel v. Hayko, 47 N. D. 416, 182 N. W. 535. Thus the finding of the trial court should have some weight and influence with this court, especially when based upon the testimony of witnesses who appear in person before the trial court, even though the findings are not clothed with the same presumption in their favor as in other cases. Bingenheimer Mercantile Co. v. Sack, 50 N. D. 381, 385, 195 N. W. 969; Doyle v. Doyle, 52 N. D. 380, 202 N. W. 860; A. M. Wilson Co. v. Knowles, 52 N. D. 886, 892, 204 N. W. 663; Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847.

It would be of little value to review all of the testimony. The real estate men who prepared the transfers and who saw them executed were satisfied that the decedent knew what he was doing and intended to do what he was doing. The papers were read to him and the purpose explained. Neither of them testified that defendant said anything to them except to tell Fladland the decedent wanted him to come to his room and draw a deed giving defendant the real estate involved. Glaserud is the administrator of decedent's estate and thus naturally represents interests opposed to defendant.

There is nothing to indicate solicitation of a transfer on the part of the defendant. There is testimony showing that a year or two prior to his death decedent wanted to deed this property to the defendant. A Mrs. Odden, a long time acquaintance of the decedent, stated the decedent had told her some time before that he was going to give this property to Sagen; that he called Sagen his "son," and that Sagen "was going to have what he had." She did not know whether he meant this at the time, or whether it was a joke, but in answer to the question: "Did he seem to think a lot of Mr. Sagen?" she said: "he certainly did, nobody he thought any more of." She saw him shortly before he died and saw nothing that indicated he was not competent to carry on his business. The wife of the defendant testified that she learned of the execution of the deed the day afterwards, and testified that when the deceased was ill, "we wanted to call his relatives, and he wouldn't let

us, and he said, 'They have gotten theirs, now it is yours. I am going to pay you.'" The attending physician would not say decedent was not normal. One Haugen was with the deceased at the time of his death and for some time prior thereto. He testified that in talking with the deceased he never heard anything that was not reasonable or sensible, and that from his intercourse with him and observation of his talk and manner he would say he was normal. Both of the ministers who visited him, knowing the decedent was ready to die, saw and observed nothing to indicate he did not know what he was doing. One of them asked him if he had made a will, and he said he had not. He then asked him if he wanted witnesses to call anyone and mentioned Glaserud, but decedent said "I am going to call them myself."

It is true that the evidence indicates the decedent was peculiar in many ways, complaining of a soughing sound in his head, pains in his head, and stomach, and exhibited many peculiarities which would indicate eccentricities at least; but such things, or even "impairment of faculties by disease or old age will not invalidate a deed, provided, the grantor fully comprehended its meaning and effect, and was able to exercise his will in executing it." Meyer v. Russell, 55 N. D. 546, 214 N. W. 857.

Appellant cites numerous cases containing recital of facts showing the persons involved therein to be mentally incapable of executing a conveyance; including the cases of Nelson v. Thompson, 16 N. D. 295, 112 N. W. 1058; Parsons v. Lee, 24 N. D. 639, 140 N. W. 712; Buchanan v. Prall, 39 N. D. 423, 167 N. W. 488; and Meyer v. Russell, 55 N. D. 546, 214 N. W. 857, supra.

The facts involved in Nelson v. Thompson are not comparable to the facts in the case cited. There is very little analogy between the facts in the case at bar and in the case of Parsons v. Lee. Buchannan v. Prall is of little help to us. It is true there is testimony here showing the decedent had been sick on several occasions. He was nervous and peculiar but all the time he took care of himself, accumulated property, worked, read, studied, and associated with one or two intimate friends. Cases from several other jurisdictions are cited, but manifestly few of the reported cases are of much help when passing upon facts alone. Human beings differ radically. One man is reticent and another is voluble; one shuns society and another can never be at home;

one weeps readily and another appears to be immune to tears; one is introspective while another appears to be care free. In all cases involved, the capacity of the individual to transact an act of business must necessarily be personal in character. Did the man involved know what he was doing and intend what he was doing?

This is not a case in which the decedent transferred all of his property to strangers in blood.

There is no proof as to the value of the real estate, but a question propounded to defendant by counsel for plaintiff indicates the total value of the transferred property to be about $3,500.00.

The estate left for his immediate relatives is of considerable value. When we consider the cordial relations which existed between the decedent and the defendant and the defendant's family, the terms of friendship and endearment expressed by the decedent, the character of those who were with the decedent at the time of the execution of the instrument and at the death of the decedent, and the nature of the intimate knowledge of the decedent they had, we come to the same conclusion as the trial court, that the decedent understood what he was doing and intended to do it so that the deed and assignment involved are the result of his own volition. It is true defendant, though discussing decedent's business affairs with decedent's brother, said nothing about getting the deed and the assignment, and accepted from the brother twenty-five dollars as "pay" for his attendance on the last illness—leaving the brother in ignorance of the transfer. We considered this in determining the real issue.

There is nothing to indicate the parties can secure additional testimony throwing light upon the mental capacity at the time of the transactions involved. Possibly additional witnesses, who were acquainted with the decedent since he came to Grand Forks in 1905, may add their version as to eccentric acts, but this is cumulative. Apparently all who were with the decedent from the beginning of his illness in December 1931 to the time of his death testified. The judgment of the lower court is affirmed.

BURKE, NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.