2017 ND 285

**Mary Ann VIG, as Personal Representative of the Estate of Junietta W. Swenson, Deceased, Plaintiff and Appellant**

v.

**Willis G. SWENSON, Defendant and Appellee**

No. 20170032

Supreme Court of North Dakota.

Filed 12/7/2017

Erin M. Conroy, Bottineau, N.D., for plaintiff and appellant.

Taylor D. Olson, Williston, N.D., for defendant and appellee.

Tufte, Justice.

[¶ 1] Mary Ann Vig, as personal representative of the Estate of Junietta Swenson, appeals from an order [1] dismissing the Estate's action against Willis Swenson. The Estate argues that Junietta Swenson lacked capacity to execute a July 5, 2012, quit claim deed conveying her home in Noonan to her son, Willis Swenson, and that he converted rent and grain proceeds when he subleased her farmland. We conclude the district court did not clearly err in finding Junietta Swenson was legally competent to execute the quit claim deed, or in finding that Willis Swenson did not convert the proceeds of a sublease of land he leased from Junietta Swenson. We affirm.

I

[¶ 2] The issues in this appeal involve a dispute between Willis Swenson and other adult children of Robert and Junietta Swenson about the ownership of the Noonan home and the right to the proceeds of leases of agricultural land. According to Willis Swenson, he moved back to North Dakota from Minnesota in 2001 to help care for his ailing father, and after his father's death in March 2005, he was primarily responsible for the care of his mother.

[¶ 3] Before Robert Swenson's death in 2005, the parents had rented their farmland in Burke County to a third party for $20,016 per year. In July 2008, Willis and Junietta Swenson entered a handwritten agreement for Willis Swenson to lease the farmland from Junietta Swenson for $20,016 per year "continuing for the term

of fifteen (15) years until October 15, 2024." In October 2008, Willis Swenson and Kyle Mahlum entered into a five-year lease to cash-rent part of the farmland for $26,667 per year and to sharecrop the remaining land. After operating under that lease for one farming season, Willis Swenson and Mahlum executed a written agreement on December 16, 2009, to cash-rent the farmland for a total annual rent of $31,022.50. Mahlum farmed the land and made payments under that lease in 2010, 2011, and 2012. Meanwhile, on November 4, 2011, Willis and Junietta Swenson executed another lease for the farmland "during the seasons of 2012 through 2022." That lease required Willis Swenson to pay Junietta Swenson a total of $20,016 per year for cash rent.

[¶ 4] On March 13, 2012, Junietta Swenson was admitted to a nursing home as a result of her declining medical condition, including chronic heart and kidney failure, macular degeneration, and diabetes. Some family members thereafter discovered that she had sold some of her dividend-producing stocks on March 14, 2012, by a telephone call initiated by Willis Swenson to her broker, and she had executed a quit claim deed conveying her Noonan home to Willis Swenson on March 15, 2012. According to those family members, Junietta Swenson had no recollection of selling her stocks and did not authorize Willis Swenson to make any transactions with her brokerage account.

[¶ 5] On March 28, 2012, the district court granted a petition for a temporary guardianship and conservatorship for Junietta Swenson for ninety days, naming two

---

1.  The Estate's notice of appeal says the appeal is from an order for dismissal. Although orders for dismissal generally are not appealable, an appeal from an order may be proper if the order was intended to be the final disposition of the court. *Lund v. Lund*, 2014 ND 133, ¶¶ 6–8, 848 N.W.2d 266. The district court's order states the Estate's action was dismissed in its entirety, and we treat this as an appeal from a final judgment dismissing the Estate's action in its entirety.

of her children, Vig and Lee Alan Swenson, as temporary guardians and conservators. The temporary guardianship and conservatorship expired on June 25, 2012.

[¶ 6] In April 2012, the State charged Willis Swenson with exploitation of an elderly adult under N.D.C.C. § 12.1–31–07.1. As a condition of bond, the district court ordered Willis Swenson to have no unsupervised contact with his mother and to execute a quit claim deed reconveying the Noonan home to her. Willis Swenson reconveyed the Noonan home to his mother on May 25, 2012.

[¶ 7] On June 22, 2012, Lee Alan Swenson petitioned for a permanent guardianship and conservatorship for his mother, alleging she was subject to undue influence by certain family members and was incapable of managing her financial affairs. After a July 11, 2012, hearing, the district court found Junietta Swenson was an incapacitated person and appointed Lee Alan Swenson as her permanent guardian and conservator on July 12, 2012.

[¶ 8] Meanwhile, on July 5, 2012, Junietta Swenson executed a quit claim deed, again conveying her Noonan home to Willis Swenson. According to Vig, Willis Swenson's "significant other," Marilee Nelson, procured Junietta Swenson's signature on the deed while visiting her at the nursing home. The deed was recorded by the Divide County recorder on February 13, 2014, after Junietta Swenson died in November 2013.

[¶ 9] The Estate sued Willis Swenson, alleging the July 5, 2012, quit claim deed was void because Junietta Swenson was incompetent to execute the instrument, and seeking an order requiring Willis Swenson to reconvey the Noonan home to the Estate. The Estate also alleged that Willis Swenson's subleases of Junietta Swenson's farmland to Mahlum constituted conversion of rent and grain proceeds that should have been paid to her.

[¶ 10] After a bench trial, the district court dismissed the Estate's action, ruling that Junietta Swenson's clear intent was to convey the Noonan home to Willis Swenson, that an April 2013 video of Junietta Swenson explained her decision to deed the home to him, and that from the entire record, it appeared the deed was for Willis Swenson's past services to his parents. The court determined Junietta Swenson was legally competent and was not suffering from a disability when she executed the July 5, 2012, quit claim deed conveying the Noonan home to Willis Swenson. The court also ruled there were no legal grounds to question the terms of the farm leases between Junietta and Willis Swenson, there was no question she was competent when the leases were executed, and she was aware of Willis Swenson's subleases with Mahlum and was "OK" with the amount of rent she received from Willis Swenson.

II

[¶ 11] The Estate argues the district court erred in finding Junietta Swenson was legally competent to execute the July 5, 2012, quit claim deed conveying her Noonan home to Willis Swenson. The Estate argues that the court's conclusory findings do not provide an understanding of its decision and that the court misapplied the law regarding capacity to execute the deed because the court's decision cited no legal standard for capacity and mistakenly relied on Junietta Swenson's intent. The Estate also contends there is insufficient evidence to support the court's decision, because the time line for the temporary and permanent guardianship and conservatorship proceedings during the period when the deed was executed is instructive and leaves a firm conviction the court made a mistake.

[¶ 12] Before a court may set aside a transaction on the ground of mental incapacity, the party attacking the validity of the transaction has the burden to prove the grantor, at the time of the transaction, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction. *Estate of Wenzel-Mosset v. Nickels*, 1998 ND 16, ¶ 13, 575 N.W.2d 425; *Matter of Estate of Nelson*, 553 N.W.2d 771, 773 (N.D. 1996); *Slorby v. Johnson*, 530 N.W.2d 307, 309–10 (N.D. 1995); *Runge v. Moore*, 196 N.W.2d 87, 102–03 (N.D. 1972); *Lee v. Lee*, 70 N.D. 79, 84, 292 N.W. 124, 126–27 (1940); *Meyer v. Russell*, 55 N.D. 546, 575, 214 N.W. 857, 869 (1927).

[¶ 13] In *Runge*, 196 N.W.2d at 103 (quoting *Lee*, 70 N.D. at 84, 292 N.W. at 126), this Court discussed the development of the law for the analysis of competency to execute a deed:

> "The test of capacity is laid down by this court several times. In *Nelson v. Thompson*, 16 N.D. 295, 301, 112 N.W. 1058, 1060 [ (1907) ], this early rule, deduced from *Jackson [ex dem. Cadwell] v. King*, 4 Cow. N.Y. 207, 15 Am. Dec. 354, 355 [ (1825) ], was adopted: 'Upon the question of incapacity to render a deed invalid, the court must be satisfied that the grantor was not in a situation to transact that particular business rationally ... not, on the one hand, that he should be capable of doing all kinds of business with judgment and discretion, nor, on the other hand that he should be wholly deprived of reason, so as to be incapable of doing the most familiar and trifling work. That, if the mind and memory were in such a situation at the time of executing the deed as to render him wholly incompetent to judge of his rights and interests in relation to that transaction, the deed would be void.'

> "In *Meyer v. Russell*, 55 N.D. 546, 214 N.W. 857, we say: 'Impairment of faculties by disease or old age will not invalidate a deed, provided the grantor fully comprehended its meaning and effect, and was able to exercise his will in executing it.'

> "Again: 'Before the court will set aside a conveyance on the ground of mental incompetency of the grantor, it is necessary to show that the grantor, at the time of the execution of the instrument, was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction involved.' *Nordby v. Sagen*, 64 N.D. 376, 252 N.W. 383 [ (1934) ].

> "Old age alone does not affect competence, even though the mind may be weak and impaired compared with what it has been, and even though the capacity to transact general business may be lacking."

[¶ 14] A district court's finding on capacity, or lack of capacity, is a question of fact. *Estate of Wenzel–Mosset*, 1998 ND 16, ¶ 14, 575 N.W.2d 425; *Estate of Nelson*, 553 N.W.2d at 773. We will not set aside a district court's finding of fact unless it is clearly erroneous. N.D.R.Civ.P. 52(a); *Estate of Nelson*, at 773. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* In a bench trial, the district court determines credibility issues, which we will not second-guess on appeal. *Buri v. Ramsey*, 2005 ND 65, ¶ 10, 693 N.W.2d 619. " 'We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible

views of the evidence is not clearly erroneous.'" *Id.* (quoting *Akerlind v. Buck*, 2003 ND 169, ¶ 7, 671 N.W.2d 256). A court's findings of fact must reflect the basis of its decision and enable this Court to understand its reasoning. *Carlson v. Carlson*, 2011 ND 168, ¶ 19, 802 N.W.2d 436. Findings of fact are adequate if we can discern the court's rationale for its decision. *Id.*

[¶ 15] The district court's findings are sparse and could have been stated with more particularity. Although there were temporary and permanent guardianship and conservatorship proceedings involving Junietta Swenson and criminal proceedings were brought against Willis Swenson for his conduct with his mother around the time frame of the July 5, 2012, quit claim deed, we reject the Estate's claim that those circumstances compel a finding that Junietta Swenson lacked capacity to execute the quit claim deed. The July 5, 2012, quit claim deed was executed after the temporary guardianship and conservatorship had expired in June 2012 and before the order for a permanent guardianship and conservatorship on July 12, 2012. Under the temporary guardianship statute in effect in 2012, "[a]ppointment of a temporary guardian is not evidence of incapacity." N.D.C.C. § 30.1–28–10(2) (2011) (current version at N.D.C.C. § 30.1–28–10.1). The deed was executed after a licensed social worker had observed Junietta Swenson in the context of the permanent guardianship and conservatorship proceeding. The social worker's report states she interviewed Junietta Swenson on July 3, 2012, two days before the quit claim deed was executed, and observed Junietta Swenson was orientated and passed all competency tests performed by the worker. A video of Junietta Swenson was recorded by Marilee Nelson in April 2013, about nine months after Junietta Swenson executed the quit claim deed on July 5, 2012, and was introduced into evidence at trial. The district

court relied on the video in determining Junietta Swenson was legally competent at the time of the deed and was not suffering from a disability.

[¶ 16] The Estate had the burden to prove that when Junietta Swenson executed the July 5, 2012, quit claim deed, she was so weak mentally as not to be able to comprehend and understand the nature and effect of the transaction. *Estate of Wenzel–Mosset*, 1998 ND 16, ¶ 13, 575 N.W.2d 425; *Estate of Nelson*, 553 N.W.2d at 773.

[¶ 17] The district court's findings effectively determined the Estate did not carry its burden of proving Junietta Swenson lacked capacity to execute the quit claim deed. The court's decision does not reflect the application of an incorrect standard for assessing her competency. There is evidence in this record supporting the court's finding that she was competent to execute the deed, and we can discern the basis for the court's decision about her competency. The court was entitled to weigh the video with the other evidence in conjunction with the Estate's burden of proof, and we decline the Estate's invitation to reweigh the evidence about Junietta Swenson's competency to execute the deed. We are not left with a definite and firm conviction the court made a mistake in assessing Junietta Swenson's competency. We conclude the court's finding about Junietta Swenson's legal competency to execute the quit claim deed is not clearly erroneous.

## III

[¶ 18] The Estate argues the district court should have found the Estate was entitled to reimbursement from Willis Swenson for rent and grain proceeds attributable to his subleases of Junietta Swenson's farmland to Mahlum. The Estate argues Willis Swenson's agricultural

leases with Junietta Swenson in 2008 and in 2011 were for longer than ten years and were each void under N.D.C.C. § 47–16–02. The Estate thus claims it was entitled to recover the additional proceeds Willis Swenson received under his subleases with Mahlum. The Estate claims the validity of Willis Swenson's leases with his mother was tried by the implied consent of the parties.

[¶ 19] Willis Swenson responds that the issue was not tried by the consent of the parties. He argues the ten-year limitation for agricultural leases in N.D.C.C. § 47–16–02 does not apply to Junietta Swenson's life estate in the agricultural land and his leases with his mother do not specify a beginning and an ending date and are not void under N.D.C.C. § 47–16–02. Willis Swenson also asserts the Estate's claim for conversion failed because Junietta Swenson was competent when she leased farmland to him and consented to his subleases to Mahlum.

[¶ 20] The Estate's complaint alleged Willis Swenson's subleases of his mother's farmland and his retention of Mahlum's additional rent constituted conversion. "Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634. Conversion requires an intent to exercise control or interfere with an owner's use to an actionable degree. *Paxton v. Wiebe*, 1998 ND 169, ¶ 28, 584 N.W.2d 72. The gist of a conversion is wrongfully depriving the owner of the property. *Ritter, Laber and Assocs.*, at ¶ 11. A district court's determination on whether conversion has been committed is a finding of fact subject to the clearly erroneous standard of review. *Paxton*, at ¶ 29.

[¶ 21] On appeal, the Estate's conversion argument is premised on its assertion that Willis Swenson's 2008 and 2011 leases with his mother were void under N.D.C.C. § 47–16–02, which provides:

No lease or grant of agricultural land reserving any rent or service of any kind for a longer period than ten years shall be valid. No lease or grant of any city lot reserving any rent or service of any kind for a longer period than ninety-nine years shall be valid.

[¶ 22] The Estate's complaint did not allege N.D.C.C. § 47–16–02 as the premise for voiding Willis Swenson's leases with his mother. When an issue is not pled in the district court, N.D.R.Civ.P. 15(b) allows the pleadings to be amended to conform to the evidence introduced at trial. *Tormaschy v. Tormaschy*, 1997 ND 2, ¶ 17, 559 N.W.2d 813. "Under N.D.R.Civ.P. 15(b), a pleading may be impliedly amended by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not within the issues in the pleadings." *Lochthowe v. C.F. Peterson Estate*, 2005 ND 40, ¶ 8, 692 N.W.2d 120. "Amendment of pleadings by implication may only arise when the evidence introduced is not relevant to any issue pleaded in the case." *Id.* We have explained:

Consent to try an issue outside the pleadings cannot be implied from evidence which is relevant to the pleadings but which also bears on an unpleaded issue. . . . :

" '[W]hen the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be

deemed amended under the first portion of Rule 15(b). <u>The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention.'</u>"

*Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D. 1989) (citations omitted).

[¶ 23] Although N.D.C.C. § 47–16–02 was not pled in the Estate's complaint, during the Estate's direct examination of Lee Alan Swenson about Willis Swenson's 2011 lease with his mother, the following colloquy occurred without objection by Willis Swenson:

Q. [Counsel for the Estate] The language of [the 2011 lease] speaks for itself, but the terms of the lease are in excess of 10 years, correct?

A. That's correct.

Q. So did you notify anybody that you felt this lease was void?

A. I notified you; yes.

Q. And on your behalf was Mr. Mahlum or anybody else notified that this lease was then void?

A. Yes.

Q. And do you know who this—my office contacted on your behalf?

A. Contacted Willis Swenson.

Q. And also Kyle Mahlum?

A. Oh, yes. Yes.

Q. So your thoughts on this [lease]—or your position on that that was void was sent to both Willis Swenson and to Kyle Mahlum?

A. Yes.

[¶ 24] During the Estate's direct examination of Vig about Willis Swenson's 2008 lease with his mother, the following exchange occurred without objection by Willis Swenson:

Q. [Counsel for the Estate] Do you think that [the 2008] lease is valid?

A. No.

Q. Why?

A. Because of past experience with the lease that was presented to Lee Alan as guardian and conservator. It was also over 10 years, and we learned that a farm lease can't go for more than a term of 10 years.

Q. So it's void.... The section, Your Honor, is 47–16–02 of the Century Code.

Q. So is it your testimony that Willis Swenson was skimming rent money from your mother?

A. I believe so.

Q. And starting in 2009, to when it was discovered, that—four years, do you think he unjustly enriched himself?

A. Yes, I do.

[¶ 25] During trial and without objection by Willis Swenson, the Estate explicitly identified the issue about the applicability of N.D.C.C. § 47–16–02 to Willis Swenson's leases with Junietta Swenson as the grounds for invalidating the leases. This record provides a clear indication to Willis Swenson that the Estate was relying on N.D.C.C. § 47–16–02 at trial to claim his agricultural leases with his mother were not valid. The issue was also raised in the Estate's post-trial brief without an objection by Willis Swenson. We conclude the issue about the applicability of N.D.C.C. § 47–16–02 was tried by consent of the parties and is properly before us.

[¶ 26] We have recognized the language of N.D.C.C. § 47–16–02 had its origin in 1846 in N.Y. Const., art. 1, § 14. *Anderson v. Lyons*, 2014 ND 61, ¶ 11, 845 N.W.2d 1; *Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406, 410 n.5 (N.D. 1979); *Wegner v. Lubenow*, 12 N.D. 95, 99, 95 N.W. 442, 443

(1903). *See* Annot., *Construction and Effect of Statutes Limiting Duration of Agricultural Leases*, 17 A.L.R.2d 566, 567 (1951).

[¶ 27] In *Anderson v. Blixt*, 72 N.W.2d 799, 803 (N.D. 1955), this Court described the requirements for a court to declare an agricultural lease invalid under the language of N.D.C.C. § 47–16–02:

> In the jurisdictions where the law restricts the duration of a lease of agricultural land, before a court is justified in declaring it invalid, it must find that the lease is of agricultural land; that the use of the land for agricultural purposes is not excluded; that rent or service is reserved; and that the term is within the restriction.

[¶ 28] In construing similar language, other courts have uniformly held that leases violating the term limitations for agricultural leases are completely void and not merely valid to the extent of the term limitation. *See Waldo v. Jacobs*, 152 Mich. 425, 116 N.W. 371, 372 (1908); *Eliason v. Eliason*, 151 Mont. 409, 443 P.2d 884, 889 (1968); *Clark v. Barnes*, 76 N.Y. 301, 304 (1879). *See also* Annot., *Construction and Effect of Statutes Limiting Duration of Agricultural Leases*, 17 A.L.R.2d at 567, 570 (stating uniform holding that leases exceeding permissible term are void *in toto*).

[¶ 29] Our decisions applying the language now codified at N.D.C.C. § 47–16–02 have interpreted the applicable leases in conjunction with the requirements for agricultural leases. *See Lyons*, 2014 ND 61, ¶¶ 13–17, 845 N.W.2d 1; *Trauger*, 279 N.W.2d at 411; *Blixt*, 72 N.W.2d at 803–04; *Wegner*, 12 N.D. at 103, 95 N.W. at 445. In *Lyons*, at ¶ 14, we concluded a lease having an "in perpetuity" duration was valid under N.D.C.C. § 47–16–02 because it included contingencies indicating the agreement would not necessarily extend beyond

a term of ten years. In *Blixt*, we construed a lease for the life of the two property owners as "dependent upon a contingency which may or may not happen within ten years." 72 N.W.2d at 805. We said the duration of the lease was indefinite because it could not be determined how long the surviving lessor would live, and we held the lease was valid under the language now codified at N.D.C.C. § 47–16–02. 72 N.W.2d at 805–07.

[¶ 30] Here, the plain language of the handwritten 2008 lease states it "commenc[es] March 15, 2009 and continu[es] for the term of fifteen (15) years until October 15, 2024." The plain language of the 2011 lease states it is "during the seasons of 2012 through 2022." Although Junietta Swenson had only a life estate in the farmland, Willis Swenson's two leases do not include any language stating the leases were for the lifetime of the lessor or the leases would terminate earlier under any other contingency. This Court's decisions in *Lyons* and *Blixt* involved express language in the actual leases with contingencies for termination before the term of ten years and so do not answer the question present here as to whether a contingency not stated in the lease may make valid an otherwise invalid lease term. Although we have not previously considered contingencies not stated in the lease, it would place form over substance to ignore the unstated life estate contingency under these circumstances. *See* N.D.C.C. § 31–11–05(19). Lessor Junietta Swenson was the holder of only a retained life estate in the leased property. Lessee Willis Swenson held a remainder interest in the leased property, along with his siblings, including Mary Ann Vig. We are thus not presented with a case where any relevant party might lack knowledge of the unstated life estate contingency. We conclude Willis Swenson's two leases with his mother are

valid and enforceable because each is by operation of law limited to the life estate interest of the lessor and thus contains a conditional term not necessarily in excess of ten years.

[¶ 31] The district court dismissed the Estate's claim for payment of the rent and grain proceeds, ruling:

> Count Two alleges [Willis Swenson] rented farmland, in Burke County, from [Junietta Swenson] for which less than the agreed upon rent was received, and none of the proceeds of the income from grain checks was paid to [her]. There are no legal grounds to go back in time and question the agreement that [Junietta Swenson] had with [Willis Swenson]. There is no question that she was competent during this time period, I find that she was aware of [his] other dealings and was apparently satisfied with what she received and was also apparently ok with him receiving something extra for [his] contributions.

[¶ 32] The district court's determination that there were "no legal grounds" to question the leases between Willis and Junietta Swenson was without analysis of N.D.C.C. § 47–16–02. Applying the proper analysis set forth above, the result is the same. The district court's findings on the Estate's claim for conversion were not clearly erroneous. We affirm the court's decision on this issue.

## IV

[¶ 33] We affirm the district court's order dismissing the Estate's action in its entirety.

[¶ 34] Jerod E. Tufte

William A. Neumann, S.J.

Jon J. Jensen

Daniel J. Crothers

Lisa Fair McEvers, Acting Chief Justice

[¶ 35] The Honorable William A. Neumann, S.J., sitting in place of VandeWalle, C.J., disqualified.

Jensen, Justice, concurring specially.

[¶ 36] I concur in the majority opinion affirming the district court's finding that Junietta Swenson was legally competent to execute the quit claim deed for her home. I concur with the majority's conclusion that the district court was correct in determining that the leases between Willis Swenson and Junietta Swenson were valid because that conclusion is compelled by this Court's prior decisions which have not been challenged. I write separately to note that I do not agree with the recognition of a life estate exception to the application of N.D.C.C. § 47–16–02.

[¶ 37] Agricultural leases are statutorily limited to a period of ten years or less pursuant to N.D.C.C. § 47–16–02. This Court has previously outlined the requirements for a court to declare an agricultural lease invalid under the statutory language as follows:

> In the jurisdictions where the law restricts the duration of a lease of agricultural land, before a court is justified in declaring it invalid, it must find that the lease is of agricultural land; that the use of the land for agricultural purposes is not excluded; that rent or service is reserved; and that the term is within the restriction.

*Anderson v. Blixt*, 72 N.W.2d 799, 803 (N.D. 1955). This Court previously created an exception to N.D.C.C. § 47–16–02 for leases with terms that extend beyond ten years, but include a contingency that could potentially limit the term of the lease to a period less than ten years. *Blixt*, at 807 (noting that a lease for the life of the two

property owners is a contingency which may or may not happen within ten years and holding the lease valid with regard to the application of N.D.C.C. § 47–16–02). This Court also recognized that although the term of a lease may extend beyond ten years, if the lease can be terminated by either party at any time, the excess time is essentially illusory and does not violate N.D.C.C. § 47–16–02. *Anderson v. Lyons*, 2014 ND 61, ¶¶ 10–17, 845 N.W.2d 1 (a lease extending "in perpetuity" but having contingencies that could limit the lease to less than ten years was valid and outside the scope of N.D.C.C. § 47–16–02). The majority opinion concludes that *Lyons* and *Blixt* are controlling.

[¶ 38] Although I agree that this Court's prior decisions are controlling, I do not agree with the creation of a life estate contingency exception to N.D.C.C. § 47–16–02 as provided in *Blixt*. However, no argument was made in this case that the holding in *Blixt* should be overturned. Absent overruling those holdings, we are bound to follow our precedent. *See Dickie v. Farmers Union Oil Co.*, 2000 ND 111, ¶ 13, 611 N.W.2d 168 ("The rule of stare decisis is grounded upon the theory that when a legal principle is accepted and established rights may accrue under it, security and certainty require that the principle be recognized and followed thereafter.").

[¶ 39] The legislature's unambiguous intent in the enactment of N.D.C.C. § 47–16–02 is to limit agricultural leases to a term of ten years. Allowing an exception when a lease is subject to a contingency, which may or may not terminate the lease short of ten years, allows a knowledgeable drafter to easily circumvent the legislature's intention to limit agricultural leases to a term of ten years. For example, an agricultural lease with a twenty-year term is now considered valid under N.D.C.C.

§ 47–16–02 simply if it is tied to the life of an infant who, statistically, can be expected to live long past the twenty-year term.

[¶ 40] In *Blixt*, this Court's recognition of a life estate contingency exception was an attempt to preserve the ten-year term limitation imposed by N.D.C.C. § 47–16–02 while maintaining the validity of the leases at issue. This Court's solution was to postpone the determination of "validity" under N.D.C.C. § 47–16–02 until the leases reached their ten-year term at which time, if the contingencies had not terminated the lease, a determination would be made as to whether or not continuation of the leases beyond ten years was appropriate under N.D.C.C. § 47–16–02. The problem with this approach is that it ignores the reality that the length of a lease is a negotiated term that may have had significant impact on the consideration paid by one of the parties. For example, the lessee may have agreed to increased lease payments in exchange for a longer term; a twenty-year lease with annual payments of $100, rather than a ten-year lease with annual payments of $75. By postponing the determination of validity until year ten, if the lessor elects to assert the lease is invalid under N.D.C.C. § 47–16–02, the lessee may be deprived of the bargained-for longer lease term without a reciprocal adjustment of the lease payment. Also, the decision in *Blixt* implies that the lease is valid for a period of ten years and then becomes invalid after ten years. This Court should review its holding in *Blixt* and eliminate the life estate contingency exception to N.D.C.C. § 47–16–02; any lease that by its terms could extend beyond ten years is not valid.

[¶ 41] Although the *Blixt* decision fails to enforce the legislative directive of N.D.C.C. § 47–16–02, it is not necessary to revisit this Court's decision in *Lyons*. In *Lyons*, the term of the lease was perpet-

ual, but both parties could terminate the lease at any time. The perpetual term was illusory and the substance of the lease was in reality an annual lease which would be automatically renewed unless either party elected to terminate the lease. The lease in *Lyons* did not violate the legislative directive contained in N.D.C.C. § 47–16–02.

[¶ 42] The result in this case is compelled by this Court's prior decisions. A challenge of the *Blixt* decision will have to wait until properly raised.

[¶ 43] Jon J. Jensen